JOHN LANHAM V. FIRST NATIONAL BANK OF CRETE
ET AL.

FILED JANUARY 9, 1896.   No. 5820.

Usury: SET-OFF.   Money paid as usurious interest to a national
    bank cannot be set off in a suit brought by the bank more than
    two years after such payment to recover the principal sum.

ERROR from the district court of Saline county.   Tried
below before GASLIN, J.

*Abbott & Abbott,* for plaintiff in error.

*F. I. Foss, contra.*

NORVAL, J.

On the 4th day of January, 1889, the plaintiff in error
executed a chattel mortgage to the First National Bank of
Crete, upon certain specific personal property, to secure the
payment of his promissory note of $3,000, given on that
date to the bank, and payable on April 22, 1889, with ten
per cent interest from date.   Subsequent to the maturity of
the note the defendant in error seized and took into its
possession the property described in the mortgage.   There-
upon John Lanham brought this action of replevin against
the bank to recover the mortgaged chattels.   A trial was
had to the court, with findings and judgment for the de-
fendant.   Plaintiff prosecutes error.

The defendant claims the property under the chattel
mortgage already mentioned.   The evidence shows that
Lanham borrowed of the defendant, at a usurious rate of
interest, the sum of $6,000, and gave his note therefor,
which note was renewed from time to time by the plaintiff
giving new notes, the last renewal being the note secured
by said mortgage.   It is also disclosed that plaintiff has

paid at various dates usurious interest on said original and renewal notes, and that the sums so paid, together with the payments made generally, equal the original amount borrowed. Most of the usurious payments were made more than two years prior to the bringing of this suit; and the sums so paid within that period, nor double the amount thereof, when added to all payments generally on the indebtedness, are insufficient to cancel the mortgage. If the plaintiff is entitled to be credited with all usurious-interest payments, whenever made, as he contends, then there was nothing due on the mortgage when this suit was instituted, and the judgment should have been against the bank. The question is presented by the record whether the plaintiff can avail himself of the provisions of section 5, chapter 44, of the Compiled Statutes of this state, which provides, *inter alia:* "If in any action on such contract proof be made that illegal interest has been directly or indirectly contracted for, or taken, or reserved, the plaintiff shall only recover the principal, without interest, and the defendant shall recover costs; and if interest shall have been paid thereon, judgment shall be for the principal, deducting interest paid." The identical question was decided in *Norfolk Nat. Bank v. Schwenk,* 46 Neb., 381. It was there held that the foregoing statute did not apply to national banks; that usurious interest paid a national bank on a note cannot be set off in an action upon such note; and that the federal statute alone determines the penalties that shall be visited upon such banking institutions for exacting and receiving illegal interest; that is, if illegal interest has been contracted for and not paid, the bank forfeits all interest; but if illegal interest has been paid to a national bank, the borrower may recover double the amount thereof, provided his action is commenced within two years from the time the usurious transaction occurred; further, that the borrower may not set off in an action on the note either the amount of usurious interest paid thereon, or double the

sum so paid, more than two years before the action was instituted. In addition to the authorities cited in the opinion in that case sustaining the doctrine, see *First Nat. Bank of Peterborough v. Childs*, 133 Mass., 248; *Ellis v. First Nat. Bank of Olney*, 11 Brad. [Ill.], 275; *First Nat. Bank of Clarion v. Gruber*, 8 W. N. C. [Pa.], 119, 91 Pa. St., 377; *Nat. Bank of Fayette County v. Dushane*, 9 W. N. C. [Pa.], 472, 96 Pa. St., 340; *Lebanon Nat. Bank v. Karmany*, 98 Pa. St., 65; *Nat. Bank of Auburn v. Lewis*, 81 N. Y., 15; *Oldham v. First Nat. Bank of Wilmington*, 85 N. Car., 240.

It is argued that the removal acts of congress have given the states control over national banks, and, therefore, such banks are subject to the remedies provided by the laws of the respective states wherein they are situated. We held adversely to this contention in *Norfolk Nat. Bank v. Schwenk*, 46 Neb., 381, *supra*, and that the removal acts did not make such banking institution liable to the penalties imposed by a state for receiving usurious interest, but the purpose of congress in enacting those laws was to prevent the removal of suits to which a national bank is a party from a state to a federal court. With the conclusion then reached we are content.

It was likewise urged that by the proviso clause of section 4 of the act of congress, approved July 12, 1892, entitled "An act to enable national banking associations to extend their corporate existence, and for other purposes," each national bank continuing its existence after the expiration of its original charter is subject to all laws governing state banks where it exists and does business. The proviso reads as follows: "That the jurisdiction for suits hereafter brought by or against any association established under any law providing for national banking associations, except suits between them and the United States, or its officers and agents, shall be the same as, and not other than, the jurisdiction for suits by or against banks not organized

under any law of the United States which do, or might do, banking business where such national banking associations may be doing business when such suits may be begun." (United States Statutes at Large, vol. 22, p. 163, sec. 4.) We cannot adopt the construction placed upon said provision by counsel for plaintiff. It is patent that it was not the intention of congress thereby to repeal section 5198 of the Revised Statutes of the United States prescribing the penalties imposed upon national banks for taking, reserving, receiving, or charging illegal interest. The purpose of the national legislature was not to subject national banks to the penalty imposed by the usury laws of the state, but to confer the same jurisdiction upon state courts for actions brought by or against national banks, with certain specified exceptions, as obtains for suits by or against banks not organized under any law of congress. So far as the forum is concerned, state and national banks were placed upon the same footing by the provision quoted above. It is true that the supreme court of the United States has not, to the knowledge of the writer, in express terms, construed the proviso clause of section 4 of the act of 1882, since most of the adjudications of that court, affirming the doctrine that money paid a national bank as usurious interest cannot be applied by way of payment or set off in an action to recover the principal sum, were rendered prior to the date of said act. The decision in *Stephens v. Monongahela Nat. Bank*, 111 U. S., 197, wherein the same principle was held and applied, after a review of the prior cases in that court upon the subject, was announced March 31, 1884, or nearly two years after the act of 1882 became operative. The fair and reasonable implication from this is that the act did not have the effect to modify or make inapplicable the previous decisions of the court upon the question under consideration.

We have examined the case of the *State v. First Nat. Bank of Clark*, 51 N. W. Rep. [S. Dak.], 587, cited by

Lanham v. First Nat. Bank of Crete.

plaintiff.  The conclusion reached in the case at bar is not in conflict with the opinion therein.  In South Dakota there is a statute which makes the receiving of a greater rate of interest than that fixed by law a misdemeanor.  Under this statute a. criminal prosecution was instituted against the First National Bank of Clark for taking usury, and it was found guilty, and the judgment was affirmed by the supreme court of the state.  While it was held that a national bank is amenable. to the criminal law of that state prescribing a fine for taking usury, it was distinctly stated that the laws of congress alone determine the results which should follow the taking by national banks of unlawful interest, its effect upon the contract, and the remedies of the parties; and further, that such remedies are purely civil.  The court in discussing the question, in the opinion, say: "It may be disciplinary and a punishment, but it is a civil punishment, as distinguished from a criminal punishment.  Exemplary damages, recovered in a civil action, are in a sense penal, but they never prevent the criminal law from operating upon the same act in the name of the state.  One is civil, the other criminal.  One is based upon the violation of private rights, the other upon the violation of the right of the state to have its laws respected."  The Dakota case is clearly distinguishable from the one before us.  The dissimilarity is so obvious that it need not be pointed out.

We entertain no doubt that the rights and remedies of the parties herein are to be determined by the provisions of section 5198 of the Revised Statutes of the United States.  The decision of the court below being in harmony with the conclusion we have reached, the judgment is

AFFIRMED.